IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Annette Turner, | ) | Case No. 3:21-cv-01646-DCC |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| | ) | |
| Wal-Mart Associates, Inc. and | ) | |
| Wal-Mart, Inc., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

This matter is before the Court upon Defendants' Motion for Summary Judgment. ECF No. 28.  In accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) (D.S.C.), this matter was referred to United States Magistrate Judge Shiva V. Hodges for pre-trial proceedings and a Report and Recommendation ("Report").  The Magistrate Judge issued a Report recommending that Defendants' Motion be granted.  ECF No. 37. Plaintiff filed objections to the Report, Defendants filed a reply, and Plaintiff filed a supplement.[1]  ECF Nos. 41, 52, 53.  A hearing was held on the parties' objections to the Report.  ECF No. 55.  This Order follows.

## APPLICABLE LAW

The Magistrate Judge makes only a recommendation to this Court.  The recommendation has no presumptive weight, and the responsibility to make a final

---

[1] Between the filing of the objections and the reply, this action was reassigned to the undersigned.

determination remains with the Court. *See Mathews v. Weber*, 423 U.S. 261 (1976). The Court is charged with making a de novo determination of any portion of the Report of the Magistrate Judge to which a specific objection is made. The Court may accept, reject, or modify, in whole or in part, the recommendation made by the Magistrate Judge or recommit the matter to the Magistrate Judge with instructions. *See* 28 U.S.C. § 636(b). The Court will review the Report only for clear error in the absence of an objection. *See Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (stating that "in the absence of a timely filed objection, a district court need not conduct a *de novo* review, but instead must only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." (citation omitted)).

## ANALYSIS

Upon review,[2] the Court finds that the Magistrate Judge provided a thorough recitation of the relevant facts and applicable law which the Court incorporates by reference. In the Complaint, Plaintiff brings claims for a hostile work environment in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and the Americans with Disabilities Act ("ADA"); a failure to accommodate in violation of the ADA; retaliation in violation of the ADA, Title VII, and the Family and Medical Leave Act ("FMLA"); wrongful termination in violation of the ADA; pregnancy discrimination in violation of Title VII; interference with her FMLA rights; and violations of the South Carolina Pregnancy

---

[2] All review of this action has been de novo except where specifically stated otherwise.

Accommodation Act.[3]   As stated above, the Magistrate Judge recommends that the Motion for Summary Judgment be granted and this action be closed.  Plaintiff filed several objections, which the Court will address in turn.

***Objection 1***

Plaintiff objects to the Magistrate Judge's finding that she is not bringing a pregnancy discrimination case.  The Magistrate Judge determined that Plaintiff did not address Defendants' arguments concerning a claim for pregnancy discrimination in the response to the Motion for Summary Judgment.  Moreover, to the extent Plaintiff intends to bring such a claim, she has failed to establish that the legitimate, non-discriminatory reasons offered by Defendants for her termination are pretext, as discussed concerning Plaintiff's retaliation claims.

In the hearing, Plaintiff admitted that she had not clearly responded to the Motion as to this claim.  However, she maintains that pregnancy discrimination is at the heart of this action.  In the reply to the objections, Defendants contend that Plaintiff ignores the Magistrate Judge's finding that Plaintiff has still not addressed the arguments raised in the Motion for Summary Judgment; accordingly, this claim has been waived.

Upon review, the Court agrees that this claim has been waived.  Plaintiff did not respond to Defendants' arguments in the Motion for Summary Judgment as to this claim.

---

[3] The Magistrate Judge notes that Plaintiff conceded in briefing that her claims for interference with her FMLA rights and for violations of the South Carolina Pregnancy Accommodation Act were untimely.  ECF No. 37 at 2 n.1 (citing ECF No. 31 at 34). Plaintiff has not objected to this finding; accordingly, upon review for clear error, the Court agrees with the Magistrate Judge that these claims are subject to dismissal.

Regardless, as explained below, Plaintiff has not established that the proffered reason for her termination was pretext.  Accordingly, this objection is overruled.

**_Objections 2–4_**

Plaintiff's next set of objections all deal with timeliness.  The Court finds that they are most appropriately addressed together.  The Magistrate Judge determined that Plaintiff had not pled facts sufficient to warrant equitable tolling.  Therefore, Plaintiff's allegations concerning ADA retaliation and wrongful termination occurring prior to June 19, 2019, are untimely, and any allegations concerning Plaintiff's other claims prior to August 24, 2019, are also untimely.

Plaintiff argues that equitable tolling should apply and that the Magistrate Judge failed to liberally construe her online inquiry dated September 19, 2019, which mentioned a failure to accommodate her disability.

The Court first turns to when Plaintiff filed a charge with the EEOC.  The Court finds that she filed an official charge on April 14, 2020.  Plaintiff's online inquiry dated September 19, 2019, does not satisfy the requirements of an official charge.  *See Sheppard v. The LPA Grp., Inc.,* C/A No. 2:07-cv-0564-DCN-RSC, 2007 WL 4981421, at *5 (D.S.C. Oct. 25, 2007), *report adopted sub nom.,* 2008 WL 444685 (D.S.C. Feb. 15, 2008).  Accordingly, the "relation back" principle described in *Edelman v. Lynchburg College*, 535 U.S. 106 (2002), is inapplicable to the present action.

Next, the Court finds that Plaintiff is not entitled to equitable tolling.  Generally, to warrant equitable tolling of a statutory deadline, a plaintiff must show: "(1) that [she] has been pursuing [her] rights diligently, and (2) that some extraordinary circumstance stood

4

in [her] way." *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005) (citation omitted); *see also*

*Irvin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990) (indicating that equitable tolling

has not been allowed "where the claimant failed to exercise due diligence" and it does not

extend to "garden variety claim[s] of excusable neglect").  Equitable tolling is available

only in "those rare instances where—due to circumstances external to the party's own

conduct—it would be unconscionable to enforce the limitation period against the party

and gross injustice would result." *Rouse v. Lee*, 339 F.3d 238 (4th Cir. 2003) (en banc)

(citations omitted).

Here, Plaintiff acknowledges that she did not respond to an email from the EEOC

requiring that she confirm her appointment.  The appointment was canceled, and she was

unable to schedule another one despite her best efforts.  As explained by the Magistrate

Judge, this is insufficient to constitute extraordinary circumstances.  The ability to timely

file the charge was within Plaintiff's control.  Accordingly, the Court finds Plaintiff is not

entitled to equitable tolling.[4]

With respect to whether Plaintiff sufficiently alleged a failure to accommodate any

disabilities in her online inquiry, she contends the Magistrate erred in failing to liberally

construe the document.  The Court disagrees.  As stated above, the online inquiry does

not constitute a formal charge.  Moreover, while pro se filings are subject to liberal

---

[4] Plaintiff, in support of this objection and others throughout her filing, has submitted new evidence that was not presented to the Magistrate Judge.  With respect to the new evidence submitted as to this objection, Plaintiff has not provided a reason that these documents were not previously submitted.  The Court agrees with Defendants that they are improperly attached to Plaintiff's objections; nevertheless, the Court further finds that they do not alter the outcome of this issue.

construction, "[t]he 'special judicial solicitude' with which a district court should view . . . pro se [filings] does not transform the court into an advocate. Only those questions which are squarely presented to a court may properly be addressed." *Weller v. Dept. of Soc. Servs. for City of Baltimore*, 901 F.2d 387, 391 (4th Cir. 1990).

Therefore, the Court agrees with the Magistrate Judge that, applying the 300-day window, Plaintiff's allegations concerning ADA retaliation and wrongful termination occurring prior to June 19, 2019, are untimely, and any allegations concerning Plaintiff's other claims prior to August 24, 2019, are also untimely. Plaintiff's objections are overruled.[5]

**Objection 5**

With respect to Plaintiff's hostile work environment claim, the Magistrate Judge determined that there was evidence in the record that Defendants had addressed and resolved the complained-of issue regarding Brenda Miller, a direct-line supervisor of Plaintiff's. Accordingly, Defendants' actions had "cut off the temporal reach of her hostile work environment claims" such that allegations related to Miller's comments in 2016 or very early 2017 should not be considered in reviewing her hostile work environment claim. ECF No. 37 at 44 (quoting *Higgins v. Farmer*, C/A No. 4:06-3501-RBH, 2008 WL 4908654, at *4 (D.S.C. Nov. 13, 2008) (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 118 (2002))).

---

[5] Plaintiff also argues that, even if these claims are untimely, they are still actionable as a part of her hostile work environment claim. The Magistrate Judge did not find otherwise; accordingly, the Court overrules this portion of Plaintiff's objections as moot.

Plaintiff argues that Defendants did not resolve the harassment but instead fostered a culture which tolerated and overlooked harassment. She contends that the Magistrate Judge erred in failing to consider the totality of the circumstances.

Defendants counter that the Magistrate Judge specifically addressed the fact that Plaintiff testified that Walmart moved Miller to a different shift and that the issues were resolved. Moreover, Plaintiff's mere general and conclusory disagreement with the Magistrate Judge is not a specific objection.

Upon review, the Court agrees with the recommendation of the Magistrate Judge. As Plaintiff testified that the issues with Miller were resolved following her complaint about her, the Court finds that Defendants took intervening curative action. *See* ECF No. 28-2 at 146. Accordingly, these allegations are not included in the continuing violations doctrine and are not considered as evidence in support of Plaintiff's hostile work environment claims. This objection is overruled.

### Objection 6

Plaintiff next objects to the Magistrate Judge's conclusion that she was granted an accommodation of frequent bathroom breaks. The Magistrate Judge found as follows,

> Plaintiff also argues Joly[6] and Bower[7] told her she could only use the bathroom during breaks [ECF No. 31-54 ¶ 3] and that "accommodation was only 'granted' on paper." [ECF No. 31 at 27]. Plaintiff has also submitted evidence that she chose not to take bathroom breaks because of the harassment she faced, as discussed above concerning Plaintiff's hostile work

---

[6] Plaintiff identified Joly as one of her direct line supervisors.

[7] Bower was a Support Manager.

environment claim. [ECF No. 31-57 at 192:12–15 ("But I was—I was nervous, so yeah, I would hold off going to the bathroom, even though I was allowed to, because I was scared, I mean.")]. It is undisputed that Plaintiff was allowed the accommodation of frequent bathroom breaks, and she has submitted evidence that Joly and Bower harassed her on this issue, notwithstanding. However, failure to accommodate allegations concerning acts prior to August 24, 2019 are untimely, and the record shows that Plaintiff's allegations concerning Joly and Bower's behavior as to her bathroom usage occurred prior to August 24, 2019, particularly in that the main complained-of event, where Plaintiff alleges she urinated on herself, occurred, at the latest, early January 2019 and where Plaintiff was on continuous leave for the birth of her child starting September 3, 2019. There is evidence Plaintiff may have worked roughly 20 hours from August 24, 2019, to September 3, 2019. [See ECF No. 28-13 at 38–39, see also ECF No. 28-4 at 41]. However, the record is silent as to this time period concerning Joly and Bower's treatment of Plaintiff concerning bathroom breaks.

ECF No. 37 at 59 n.40.

Plaintiff maintains she was told that the accommodation was merely granted on paper while her managers intimidated her into not using this accommodation. Defendants argue that this objection is self-serving and conclusory. They argue that the Magistrate Judge specifically considered Plaintiff's allegation that she was intimidated into not utilizing her accommodation. They agree with the Magistrate Judge that he only specific alleged instance in the record and the only instance with a potential date was the January 2019 incident, which is untimely.

Upon review and in consideration of the findings above, the Court agrees with the recommendation of the Magistrate Judge. Plaintiff has not pointed to any additional

evidence in the record such that the undersigned would disturb the findings of the Magistrate Judge. This objection is overruled.

***Objection 7***

In her seventh objection, Plaintiff takes issue with the Magistrate Judge's finding that "medical records submitted show only that Plaintiff repeatedly denied having contractions and do not support her testimony that she went into premature labor during this pregnancy." *See* ECF No. 37 at 21 n.14 (citing ECF Nos. 31-16 at 2; 31-17 at 45; 31-19 at 1, 39). Plaintiff presents new evidence not before the Magistrate Judge in the form of medical records that Plaintiff contends establish that she was in preterm labor.[8]

The Court agrees with Defendants that Plaintiff provides her own interpretation of the medical records without any citations or medical knowledge. Moreover, one of the documents pointed to by Plaintiff indicates that on July 18, 2019, "symptoms of labor not present." (ECF No. 41-2 at 6). The Court finds no reason to disturb the findings of the Magistrate Judge as to this issue and overrules this objection.

***Objection 8***

Plaintiff's eighth objection concerns the Magistrate Judge's finding that Plaintiff gave contradictory sworn statements. The Magistrate Judge determined Plaintiff's

---

[8] In her explanation as to why these records were only recently discovered, Plaintiff acknowledges that the Court has the discretion to consider the additional evidence. ECF No. 41 at 6 n.3. She contends that there is good cause to consider the new evidence. The Court disagrees and finds that Plaintiff has not provided a sufficient reason for the delay in presenting these records. However, as explained in more detail below, the Court also finds, that even if it were to consider the medical records, the outcome would be the same.

testimony that she only got in trouble[9] for declining to lift over her weight restriction on one occasion contradicted her affidavit in which she stated that she "was made to do heavy lifting that was outside my work restriction all the time." ECF No. 37 at 10 (citing ECF Nos. 31-54 ¶ 1; 31-57).

Plaintiff contends that the Magistrate Judge improperly found that these statements were contradictory when, in fact, there were several examples in the record of Plaintiff testifying that she was required to lift over her weight restriction. Defendants argue that the Magistrate Judge properly found these statements were inconsistent because Plaintiff's generalized statements fail to provide sufficient support for her assertion that she was forced to lift too much all the time.

Upon review, the Court agrees with the Magistrate Judge. Plaintiff has presented two inconsistent statements; accordingly, the Court is entitled to disregard the affidavit. *See Kinser v. United Methodist Agency for the Retarded–W. N. Carolina, Inc.,* 613 F. App'x 209, 210 (4th Cir. 2015). The evidence pointed to by Plaintiff in the objections largely does not relate to the lifting restriction at issue. Moreover, her general statements, without reference to a specific event, fail to establish that she was frequently required to lift over her weight restriction. Accordingly, this objection is overruled.[10]

---

[9] Plaintiff testified that she was threatened with coaching but she did not believe she was ever actually coached based on this incident.

[10] As pointed out by Defendants, Plaintiffs allegations as to events prior to June 19, 2019, are untimely as to her ADA retaliation and wrongful termination claims and events prior to August 24, 2019, are untimely as to her remaining claims.

*Objection 9*

In her ninth objection, Plaintiff argues that the Magistrate Judge erred in concluding that she was not forced to work beyond her restrictions.  On this issue, the Magistrate Judge found that,

> Plaintiff additionally argues that she was forced to stay as a stocker and do work that violated her work restrictions.[39] Plaintiff argues that the accommodations provided, frequent bathroom breaks, intermittent use of stool or chair, 25 lbs. lifting restriction, a standing restriction, no climbing ladders, 15-minute breaks, and an eight-hour shift limit, were violated in that, following being provided these accommodations, her work did not change and she was assigned to work the heaviest departments. However, evidence cited by Plaintiff does not support her position. First, as testified by [Brian] Dickert [who supervised Defendants' managers] and others, being placed in "heavy" departments does not mean heavy lifting where, for example, in furniture, lamps and pillows needed to be unpacked.  Second, Plaintiff herself testified although it was difficult to get assistance to help with heavier items, she only "got in trouble" once for not lifting something, she was told to get assistance, and she was not coached for this instance.
>
> [39] Plaintiff additionally argues that she was only allowed to use a stool twice and when she did, Hancock told her to "look busy." [ECF No. 31 at 27]. However, Plaintiff's citations to the record do not support these allegations, and the court is unable to determine where, if at all, these allegations are otherwise supported by the record. [See, e.g., ECF No. 31-57 at 353:11–22 (Plaintiff testifying that "they would tell me . . . . You need to at least make yourself look busy . . . .")].

ECF No. 37 at 58.

Plaintiff argues that the Magistrate Judge improperly weighed the evidence in crediting Dickert's testimony that, in in heavier departments, there was light work that

Plaintiff could do while adhering to her restrictions. Plaintiff points to the recently produced medical records to support her argument that she was being required to work beyond her restrictions and argues that the only accommodation Defendants claim to have made was in Joly and Hancock telling her not to lift anything heavy; Plaintiff maintains that this failed to take into account the numerous restrictions that should have been abided by. Plaintiff specifically points to her complaint to the Accommodation Service Center on May 15, 2019, in which she complained that she was being required to bend repetitively as a stocker, which was causing "flare ups." ECF No. 31-48 at 4.

The Court turns first to the medical records. Many of these records are being produced for the first time in response to the Report. As previously stated, the Court is of the opinion that these records are not properly submitted at this procedural posture. However, even taking them into account, they do not operate to contradict the findings of the Magistrate Judge. Plaintiff points to the medical records, in part, as evidence that Plaintiff was being overworked; however, all the medical records establish is that Plaintiff reported that she was being worked beyond her restrictions to medical personnel—it is not evidence of anything beyond what she apparently told the medical staff. Moreover, Plaintiff has included numerous explanations and conclusions with respect to items in her medical records that she fails to provide any support or authority for. In short, the Court finds that the medical records do not support Plaintiff's claims.

Turning to Plaintiff's remaining arguments, the Court finds that there is sufficient evidence in the record to establish that Plaintiff was not required to work beyond her restrictions. With respect to lifting, she was told to leave items that were above her weight

12

restriction.  *See* ECF Nos. 31-60 at 18; 31-59 at 9–10.  Moreover, Defendants' break policy encompassed Plaintiff's restriction.  *See* ECF No. 31-59 at 10.

With respect to Plaintiff's arguments that the HR representative was unaware of any restrictions for Plaintiff, the record does not support this conclusion.  The fact that Brandi Miller told Plaintiff to contact Sedgwick, Defendants' third-party administrator for all leave and accommodation requests, does not necessarily imply that she was unaware of any current restrictions as argued by Plaintiff.  Moreover, as discussed in detail in the Report, there is evidence in the record that Plaintiff could stock without violating her restrictions.

With respect to Plaintiff's argument that, when she was assigned to furniture, she was not specifically limited to moving pillows or lamps, the Court finds that this fails to contradict the Magistrate Judge's analysis.  In his deposition, Dickert stated that there were always smaller items to stock.  This statement can be true without specifically restricting Plaintiff to pillows and lamps.  Further, as stated above, there is sufficient evidence in the record to find that Plaintiff was told to leave any item that exceeded her weight restriction and that Plaintiff was not coached for failing to lift items that were too heavy.  Accordingly, this objection is overruled.

***Objection 10***

Plaintiff argues that the Magistrate Judge erred in recommending summary judgment be granted as to her hostile work environment claims.  With respect to Plaintiff's hostile work environment claims, the Magistrate Judge found, in part,

Here, Plaintiff has submitted sufficient evidence that she perceived her environment to be abusive, but has failed to "clear a high bar" that a reasonable person in her position would have found the environment objectively abusive. Although Bower's name-calling is offensive, there is no indication how pervasive it was or in what context the name calling occurred, nor is it clear each instance is related to Plaintiff's gender, sex, or disability. *See, e.g., Martin v. Merck* & Co., 446 F. Supp. 2d 615, 629 (W.D. Va. 2006) ("While these [sixteen] incidents may be evidence of an unpleasant working environment, they do not permeate Merck 'with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" (citing O*ncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 78 (1998)); *Clarke v. New York City Dep't of Educ.*, C/A No. 18-1850-NG-GJO, 2020 WL 6047426, at *9 (E.D.N.Y. Oct. 13, 2020) ("Principal Christie's criticism of Ms. Clarke was at times unrelenting and needlessly personal. However, with a handful of exceptions, Principal Christie confined herself to discussing Ms. Clarke's job performance. The other comments, such as calling Ms. Clarke fat and imitating her rubbing her belly and waddling, are too sporadic to sustain a hostile work environment claim on their own.").

As to Plaintiff's argument that she was subjected to increased scrutiny, even yelling, regarding her bathroom breaks, this evidence, even when taken in light most favorable to her and considering all other evidence submitted by Plaintiff in support of her claim, does not amount to a workplace permeated with hostility and harassment, particularly where Plaintiff's evidence is focused on one or two specific occurrences. *See, e.g., Graciani v. Patients Med., P.C.*, No. 13-CV-2751 NGG RLM, 2015 WL 5139199, at *22 (E.D.N.Y. Sept. 1, 2015) ("Dr. Gulati's reaction to Plaintiff's bathroom usage, if true, was inappropriate, but was not severe or pervasive enough to render the work environment hostile."); *Medina v. Adecco*, 561 F.Supp.2d 162, 173 (D.P.R. 2008) (granting summary judgment where supervisor made negative comments each

time pregnant employee took pregnancy-related bathroom
break).

ECF No. 37 at 50–51.

Plaintiff argues that the Magistrate Judge failed to consider the totality of the
evidence and makes a recommendation that is contrary to controlling law.  She asserts
that she has offered evidence of humiliating treatment and that Defendants hostility
towards her taking breaks or leaving on time intimidated her into not using the
accommodations. She asserts the evidence establishes that the treatment was daily and
pervasive.  She contends she was forced to work beyond her restrictions which caused
her to seek medical care and miss work.  Plaintiff argues that she was coached and given
occurrences for disability-related absences that were only removed when she raised the
issue.[11]

Plaintiff argues that the Magistrate Judge disregarded offensive comments by
Bower and others because they were not pervasive enough, or clearly related to Plaintiff's
gender, sex, or disability.  She contends this finding fails to consider the context.  Plaintiff
further contends that the Magistrate Judge improperly dismissed certain comments as
too removed or because they were made by other managers; however, she maintains
that these comments were relevant as evidence of a discriminatory atmosphere.  Plaintiff

---

[11] Plaintiff also argues that the fact that she was forced to work beyond her
restrictions is, on its own, sufficient evidence of a hostile work environment; however, as
discussed above, the Court overrules Plaintiff's objection as to whether she was required
to perform such work.

15

further argues that the Magistrate credits Dickert's testimony over Plaintiff's and fails to construe all facts and inferences in the light most favorable to the non-moving party.

As an initial matter and as discussed above, with respect to Plaintiff's allegations regarding Miller, the Magistrate Judge determined, and the undersigned agrees, that there was sufficient evidence in the record that Defendants remedied the alleged conduct such that it is inappropriate to consider it as evidence of a hostile work environment.  *See Caldwell v. Johnson*, 289 F. App'x 579, 581 (4th Cir. 2008) ("Because her employer addressed promptly and reasonably each of her allegations of discrimination, we affirm the judgment of the district court on the hostile work environment claims.").  Plaintiff argues that there is evidence in the record that Joly was particularly hostile towards women; however, the Magistrate Judge thoroughly evaluated Joly's comments and Plaintiff's allegations in the context of her hostile work environment claims.  *See* ECF No. 37 at 47 n.31, 48–49, 51 n.4, 53.  With respect to Plaintiff's objections regarding Bower, she contends that it was clear that the name-calling was related to her pregnancy but does not address the Magistrate Judge's remaining points as to a lack of evidence with respect to how pervasive any such comments were.  Upon review, the Court agrees with the recommendation of the Magistrate, that these allegations are insufficient to preclude a finding of summary judgment.

As to Plaintiff's argument that she was subjected to yelling regarding her bathroom breaks, the Court also finds that she has presented sufficient evidence in support of her claim.  These allegations, however, fail to rise to the level of a workplace permeated with hostility and harassment, particularly in light of the limited number of occurrences put forth

by Plaintiff. Moreover, the Court finds that the facts in this case are distinguishable from those in *Strothers v. City of Laurel*, 895 F.3d 317 (4th Cir. 2018). In *Strothers*, the court recited a specific moment wherein the supervisor publicly humiliated the plaintiff by pulling on her pants, lunging at her, and berating her. Here, Plaintiff generally asserts that she was subject to humiliation. This allegation, without more, is insufficient to establish that Plaintiff was subjected to humiliating treatment.

Finally, with respect to Plaintiff's final argument that the Magistrate Judge improperly weighed evidence and failed to follow the requisite standard on a motion for summary judgment, the Court finds that Plaintiff has not provided any support for these conclusory allegations. *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985) (holding that conclusory allegations without more and insufficient to preclude a finding of summary judgment). Accordingly, Plaintiff's objection is overruled.

**Objection 11**

Plaintiff's eleventh objection concerns her claim that Defendants failed to accommodate her by failing to transfer her to a cashier position. The Magistrate Judge found, inter alia, as follows,

> Plaintiff has failed to carry her burden that transferring her to
> be a cashier would allow her to perform her job. First, Plaintiff
> does not address evidence presented by Defendants that
> transferring to a cashier role would have required her to
> perform the very same stocking duties that she complains
> about in this case. [ECF No. 28-6 at 27:15–22 (Hancock
> testifying that "mostly it's the cashiers who were also doing
> stock duties"); ECF No. 28- 8 at 56:19–20 (Joly testifying that
> "Cashiers still lift. They're on the front end . . . . but the
> cashiers also go out and work freight"); ECF No. 28-9 at 29:4–

17 (Victoria Nero, another employee, testifying cashiers were required to do stocking as part of the position, sometimes involving heavier items); ECF No. 28-7 at 50:6–17 (Brandi Miller testifying "[y]ou have to still stock as a cashier, candy, freight, across that front")]. [37]

Second, as both parties appear to agree, Defendants were not obligated to provide Plaintiff with an accommodation of her choice.  *See, e.g., Fink v. Richmond*, 405 Fed. Appx. 719 (4th Cir. 2010) ("Importantly, however, the ADA and the Rehabilitation Act do not require that an employer provide a disabled employee with a perfect accommodation or an accommodation most preferable to the employee."); *E.E.O.C. v. Firestone Fibers & Textiles Co.*, 515 F.3d 307 (4th Cir. 2008) (Title VII); *Keever v. City of Middletown*, 145 F.3d 809 (6th Cir. 1998) (ADA).

Finally, Defendants have presented evidence that Plaintiff was not transferred to be a cashier because she would leave her job without notifying management, a habit inconsistent with the position of cashier at the front of the store. As Brandi Miller testified, "You have to still stock as a cashier, candy, freight, across that front, but you still have to be the person watching the door. . . . You cannot disappear from the front end." [ECF No. 28-7 at 50:6–17]. Defendants have submitted evidence that in the 15 months leading up to her termination in early April 2020, Plaintiff did not work her scheduled shifts on 131 instances, specifically as follows:

• Absent from work: 66 days (7 of which were unexcused)

• Late into work: 28 times (0 of which were unexcused)

• Left work early: 28 times (2 of which were unexcused)

• Incomplete shift (missing more than 50% of her shift): 9 times (1 of which was unexcused)

[ECF No. 36 at 5–6 (citing ECF No. 28-4 at 42–45, ECF No. 31-3)]. Additionally, Plaintiff admitted in her deposition that

she had difficulties informing management when she needed to leave work. [ECF No. 31-57 at 130: 3–132:18].[38]

[37]Plaintiff argues that "there is no evidence that stocking is an [essential work function "for a cashier so that was not a basis to deny her this transfer."[ECF No. 31 at 31]. However, this does not address evidence submitted by Defendants that cashiers, as well as stockers, engaged in stocking. See, e.g., *Cook v. United Parcel Serv., Inc.*, C/A No. 21-1693,2022WL 1090251, at \*2 (4th Cir. Apr. 12, 2022) ("[T]he decision about a position's essential functions belongs, in the first instance, to the employer; it accordingly merits considerable deference from the courts.") (citing *Elledge v. Lowe's Home Ctrs.*, LLC, 979 F.3d 1004, 1009 (4th Cir. 2020)).

[38] Plaintiff argues in briefing that she left work consistent with her intermittent leave accommodation or because of the way she was treated. [*See, e.g.*, ECF No. 31 at 6 ("In other words, [Joly] prevented a pregnant woman from taking necessary bathroom breaks, and then deemed her unreliable for urinating on herself.")]. This evidence indicates Plaintiff may have left work through no fault of her own, but does not carry her burden that she could perform the position of cashier. *See, e.g., Buckles v. First Data Res., Inc.*, 176 F.3d 1098, 1101 (8th Cir. 1999) (holding "unfettered ability to leave work at any time is certainly not a reasonable accommodation here."); *Carr v. Reno*, 23 F.3d 525, 531 (D.C. Cir. 1994) (holding "to require an employer to accept an open-ended 'work when able' schedule for a time-sensitive job would stretch 'reasonable accommodation' to absurd proportions. . . .").

ECF No. 37 at 55–58.

Plaintiff argues that the Magistrate Judge erred in failing to do a fact specific inquiry and analyze the evidence pursuant to the law on essential job functions. She contends that the witnesses presented by Defendants did not have the authority to determine that stocking was an essential function of the cashier job and that they failed to provide a copy

of the job description; therefore, the Magistrate Judge should have inferred that stocking was not an essential function of the cashier position. Further, she contends there is no evidence as to how much time is spent stocking as a cashier.

Plaintiff agrees that Defendants were not required to provide her with her choice of accommodation, but they did need to provide a reasonable accommodation. She argues that the reason she repeatedly left work early was because she was not being sufficiently accommodated in the positions Defendants put her in. Moreover, in looking back six months, Plaintiff met the attendance policy. Plaintiff also takes issue with the Magistrate Judge's recitation of testimony in the record wherein Miller stated that "you cannot disappear" and work as a cashier. Plaintiff contends that this is evidence that the Magistrate Judge made improper credibility determinations.

Upon review, the Court agrees with the recommendations of the Magistrate Judge as to whether Defendants failed to accommodate Plaintiff. The evidence in the record establishes that stocking was required for cashiers. Plaintiff's insistence that this is not the case is not rooted in the evidence available in this action. She asserts that a written job description should be treated as the definitive factor in deciding the essential functions of the cashier position; however, in the law quoted by Plaintiff, this element is one factor to be considered by courts in determining the essential functions. ECF No. 41 at 20 (quoting 29 C.F.R. § 1630.2(n)(2)(i)–(iii)).

The Court finds that the Magistrate Judge thoroughly and properly considered Plaintiff's arguments with respect to her failure to accommodate claim and agrees with

her conclusions.  There is evidence in the record that stocking was an essential function

of the cashier position.  Plaintiff has not presented evidence to the contrary.

With respect to Plaintiff's argument that her absences were the result of failing to

accommodate her restrictions, as explained above and in more detail by the Magistrate

Judge, there is sufficient evidence that Plaintiff's restrictions were accommodated.[12]

Accordingly, this objection is overruled.[13]

***Objections 12–14***

Plaintiff objects to the Magistrate Judge's determination that she failed to establish

a prima facie case of retaliation.  The Magistrate Judge found as follows,

> Plaintiff has failed to establish a prima facie case of retaliation.
> Although temporal proximity may suffice to establish
> causation when the protected activity and adverse action are
> "very close" or less than, for example, three months apart,
> *see, e.g., Ali v. BC Architects Engineers, PLC*, 832 F. App'x
> 167, 173 (4th Cir. 2020), *as amended* (Oct. 16, 2020) (holding
> two weeks close enough ,but three months "too tenuous to
> support a reasonable inference of causation"), here, Plaintiff's
> employment was terminated on April 5, 2020, and Plaintiff has
> failed to submit evidence of any protected activity occurring
> close in time prior to that event.   Further, Plaintiff cannot
> establish that Hancock, who made the decision to terminate
> Plaintiff's employment, knew of the majority of her protected

---

[12] Plaintiff also makes an argument that, surely, Defendants could have made
Plaintiff a cashier without stocking responsibilities.  As Plaintiff has not referred to any
evidence in the record in support of this argument, it appears to reflect her own
impressions of what the job would ideally entail.

[13] The Court notes that Plaintiff attached the ADA management training guide in
support of this objection; the training guide argument was not presented to the Magistrate
Judge.  Regardless, the training guide states that zoning is not an essential job function
of the cashier position and is silent as to the issues at hand.

> activities, none of which occurred in the six to seven months
> prior to her termination.

ECF No. 37 at 62–63.  The Magistrate Judge further found that Plaintiff could not establish

the third element of her retaliation claim given her poor attendance record and the fact

that she fails to present evidence that Hancock terminated her on the basis of complaints

or FMLA leave.  The Magistrate Judge concluded that,

> Further, Plaintiff cannot establish that Hancock, who made the
> decision to terminate Plaintiff's employment, knew of the
> majority of her protected activities, none of which occurred in
> the six to seven months prior to her termination. *See, e.g.,
> Barnes v. Charles Cnty. Pub. Sch.,* 747 F. App'x 115, 119 (4th
> Cir. 2018) ("Barnes presented no evidence to indicate that the
> principal was aware of Barnes' protected activity. An
> employee is not insulated from discipline simply because he
> engaged in protected activity.") (citations omitted)).

ECF No. 37 at 63–64.

Plaintiff asserts that, in this case, she can establish causation despite the

substantial lapse in time between the protected activity and the alleged retaliatory action.

She relies on her hostile work environment claims in support of this point.  She further

argues this was Defendants' first opportunity to retaliate against her.

The undersigned and the Magistrate Judge have discussed Plaintiff's hostile work

environment claims above and in the Report and determined that these claims are subject

to summary judgment.  Accordingly, Plaintiff's argument here that these claims can

support temporal proximity for her retaliation claim is without merit.  As is Plaintiff's claim

that this was Defendants' first opportunity to retaliate against her.  Plaintiff argues that her

COVID-19-related absences were the first opportunity to retaliate against her; however,

she has previously argued in her objections that other absences, early departures, and late arrivals were forgiven by Defendants. Thus, the Court concludes that Plaintiff's absences due to the COVID-19 pandemic did not constitute Defendants' first opportunity to retaliate against Plaintiff.

Plaintiff next argues that she presented direct evidence that Hancock knew of her protected activity in the form of a written statement dated June 5, 2019. As noted by Defendants, the Magistrate Judge's Report states that Plaintiff cannot establish that Hancock knew of a majority of Plaintiff's protected activity. To the extent Plaintiff alleges an error of fact by the Magistrate Judge, the Court disagrees. Accordingly, for the reasons set forth above, these objections are overruled.

**Objection 15**

In her fifteenth objection, Plaintiff states that "[a]s set forth below in the wrongful termination section, the Plaintiff has submitted ample evidence that the reason given for the termination was pretextual." ECF No. 41 at 28. The Magistrate Judge's Report relies on the reasoning articulated in the retaliation section in discussing Plaintiff's wrongful termination claim. Accordingly, the Court will view Plaintiff's objections directed at the retaliation section as also addressing her wrongful termination claim. The Court finds Objection 15 is moot as it merely references another section of Plaintiff's objections.

**Objection 16**

Plaintiff next argues that the Magistrate Judge erred in making the following statement,

> Plaintiff attests that "right after" she submitted her May 18, 2019 complaint, "they took me off the schedule for five weeks," and, although she repeatedly called co-manager Natasha Jones ("Jones") and texted Joly, neither would respond. [ECF No. 31-54 ¶ 10]. Plaintiff testified that she called Jones and was told she was removed from the schedule because "Donald Joly and Jon Bower told her that she wasn't showing up to work, period, even though I had been to work, but the problem was they kept having me in stock." [ECF No. 31-57 at 129:6–10]. Plaintiff also testified that at some point, she was told her hours were cut because they were cutting everyone's hours, even though other employees informed her that was not the case. Id. at 286:7–288:1.
>
> The record shows that Plaintiff was absent from work during this timeframe on May 24th, June 7th, June 8th, June 9th, and June 12th without receiving points/occurrences. [ECF No. 28-4 at 42]. Additionally, Plaintiff testified that Hancock "gave [her] the week off" from work at her own request beginning May 26, 2019 to recover from alleged preterm labor. [ECF No. 28-2 at 136:3–137:2; see also ECF No. 31 at 9 (Plaintiff identifying that the May 26, 2019 visit to Aiken Regional Medical Providers was when she experienced premature labor)].

ECF No. 41 at 28 (citing ECF No. 37 at 23). Plaintiff argues that the Magistrate Judge erred in finding that her requested time off was in May of 2019 and instead asserts that it was in July of that year.

As identified by the Magistrate Judge, in the Response to the Motion for Summary Judgment Plaintiff identified her early labor as occurring in May 2019. *See* ECF No. 31 at 9. Plaintiff's belated reference to recently discovered medical records fails to overcome the evidence presented in the record and properly analyzed by the Magistrate Judge. Accordingly, this objection is overruled.

*Objection 17*

In her seventeenth objection, Plaintiff contends that it was Joly who terminated Plaintiff and not Hancock.  On this point, the Magistrate Judge found as follows,

> To the extent that Plaintiff argues that it was Joly that terminated her employment, notwithstanding Joly and Hancock's testimony otherwise [see ECF No. 31 at 32, ECF No. 31-34], and to the extent that the record shows Joly was aware of Plaintiff's protected activity, the timeline is still too attenuated to support Plaintiff's prima facie case of retaliation nor, as discussed more above, has Plaintiff shown Defendants' offered reason for her termination is pretext.

ECF No. 37 at 64 n.43.  Accordingly, the Court finds that the Magistrate Judge has already analyzed this issue in the manner Plaintiff asserts that she should have. Therefore, as both parties do now and as the Magistrate Judge did in the Report, the Court reiterates that the same reasoning would apply to Joly as applies to Hancock. Plaintiff still fails to establish causation.  To the extent Plaintiff merely intended to reiterate her position that Joly was the one who terminated her, that argument is noted.   This objection is overruled.

*Objection 18*

In Plaintiff's final objection, she argues that the Magistrate Judge erred in finding that the proffered reason for her termination was not pretext.  With respect to pretext, the Magistrate Judge determined, inter alia,

> Finally, even if Plaintiff had established a prima facie case, she has failed to show Defendants' legitimate, non-discriminatory reason for her termination—that she failed to abide by the COVID-19 policy and was out from work roughly three weeks without notifying Sedgwick—is pretext . . . .

Plaintiff argues "pretext abounds," in that she complied with the COVID-19 policy directions issued on March 10, 2020 . . . . Plaintiff does not dispute that she was in violation of the March 18, 2020 policy and also does not address the key piece of evidence in support of Defendants' position, that the March 10, 2020 letter that Plaintiff relies upon states "[m]ore information on all of these options will be available on OneWalmart." [ECF No. 31-32]. Although Plaintiff argues that she called in as she was instructed based on the direction provided to her in the March 10, 2020 letter, she offers no evidence or case law that Defendants acted impermissibly, or without legitimate reason, when they issued further instructions regarding their COVID-19 leave policy and, thereafter, expected Plaintiff to abide by the new instructions.

Plaintiff may, with good reason, decry this as unfair. However, as stated by the Fourth Circuit, even if a plaintiff is wrongly fired for misconduct, conduct she did not even engage in, "that is unfortunate, but a good-faith factual mistake is not the stuff of which Title VII violations are made." *Powell v. Biscuitville, Inc.*, C/A No. 20-2378, 2021 WL 2434011, at *2 (4th Cir. June 15, 2021) (citing *Villa v. CavaMezze Grill, LLC*, 858 F.3d 896, 903 (4th Cir. 2017)). The court does not "sit as a super-personnel department, weighing the prudence of employment decisions made by the defendants." *DeJarnette v. Corning, Inc.*, 133 F.3d 293, 299 (4th Cir. 1998) (holding that pretext is not a vehicle for substituting the court's judgment for that of the employer). The court need not decide "whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the plaintiff's termination." *Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 279 (4th Cir. 2000) (citation omitted).

Plaintiff additionally points to Hancock's testimony that he did not "think" her absences were for COVID, as well as Hancock's inability to explain why he logged into the system as Joly to sign the exit interview. [ECF No. No. 31 at 34]. However, a plaintiff cannot establish pretext by simply "focusing on minor discrepancies that do not cast doubt on the explanation's validity, or by raising points that are wholly

> irrelevant to it." *Hux v. City of Newport News*, 451 F.3d 311,
> 315 (4th Cir. 2006). Hancock's testimony does not cast doubt
> on Defendants' legitimate, non-discriminatory explanation for
> terminating Plaintiff's employment.

ECF No. 37 at 64–67.

Plaintiff argues that she was given occurrences for absences during the time that the occurrence policy was waived as a result of the COVID-19 pandemic. She contends that there are numerous inconsistencies that cast doubt on Defendants' proffered reason for Plaintiff's termination. Further, Plaintiff maintains any deviation from the policy was trivial and did not rise to the level of termination. Plaintiff asserts that failure to excuse the absences was evidence of discriminatory animus as was Hancock's failure to look into the reason for Plaintiff's absences.

There is no dispute that Defendants had made alterations to the occurrence policy in response to the COVID-19 pandemic. The issue is Plaintiff's compliance with the new policy. Plaintiff maintains that she was not required to inform Sedgwick that she was absent either because it should have been excused in light of the pandemic or because the requirements under Defendants' COVID-19 policies changed without any way for her to know once she was already out of work.

The Magistrate Judge addressed these points in her thorough Report. Rather than rehash every point made by the Magistrate Judge, the undersigned will respond to the most significant points made by Plaintiff. There is evidence in the record that Walmart posted changes in policies to their OneWalmart portal. There is further evidence that Plaintiff was informed that changes to any policy would be posted to OneWalmart and

that changes were made.  These changes required Plaintiff to inform Sedgwick if any absence went beyond three days.  It is uncontested that her absences exceeded three days.

Plaintiff's arguments that failure to excuse the absences, failure to investigate the nature of the absences, and the fact that the designation of the absences was changed by Hancock is necessarily evidence of animus are also unavailing.  Plaintiff has pointed to no requirement, either within Defendants' policies or in the law, that Hancock was required to excuse the absences in light of Plaintiff's failure to comply with the posted policy.  Further, he was under no obligation to investigate the absences—rather it was Plaintiff's responsibility to alert Sedgwick that she was out pursuant to the COVID-19 policy.  With respect to Plaintiff's argument that there is no explanation for Hancock to change the nature of the absences in the system other than animus and intent to terminate her employment, that was addressed by the Magistrate Judge as follows,

> Plaintiff additionally appears to argue it was suspicious that Hancock changed her absences to unexcused hours after Kirkland "excused her absence for Covid." [ECF No. 31 at 34]. However, Kirkland testified he thought Plaintiff was following the relevant policy, and therefore approved her absences, "[b]ased on communication with the associate that she was going to file a Sedgwick-approved leave of absence for that time, because it would have been excused if she would have done that." [ECF No. 31-61 at 82:23–83:4, 96:23–97:8].

ECF No. 37 at 67 n.43.  Upon de novo review, the Court agrees with the findings of the Magistrate Judge as to this point.  Accordingly, Plaintiff's objection is overruled.

## CONCLUSION

Based on the foregoing and upon review of the record, the applicable law, and the Report, the Court adopts the recommendation of the Magistrate Judge.   Defendants' Motion for Summary Judgment [28] is **GRANTED**.

IT IS SO ORDERED.

September 26, 2023                                  s/ Donald C. Coggins, Jr.
Spartanburg, South Carolina                        United States District Judge